NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC TODD BELL, *Appellant.*

No. 1 CA-CR 24-0298

FILED 12-30-2025

Appeal from the Superior Court in Maricopa County
No.  CR2021-141055-001
The Honorable Joseph C. Kreamer, Judge

**AFFIRMED IN PART, MODIFIED AND VACATED IN PART, AND
REMANDED FOR RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Casey D. Ball
*Counsel for Appellee*

The Susser Law Firm, PLLC, Chandler
By Adam Susser
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

---

**K I L E Y**, Judge:

¶1        Eric Todd Bell appeals his convictions and sentences for kidnapping and sexual assault. We modify three of Bell's convictions for sexual assault, vacate the sentences imposed, and remand for re-sentencing on those counts. We otherwise affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        We view the facts and all reasonable inferences in the light most favorable to affirming Bell's convictions. *State v. Haywood*, 257 Ariz. 472, 475, ¶ 2 (App. 2024) (citation omitted).

¶3        In the fall of 2021, Lindsay[1], a college student, lived in an apartment in Tempe and worked part-time at a nearby hotel. After going out with friends on a Saturday night in October, Lindsay returned home in the early morning hours to discover that she was without her keys and unable to get into her apartment. Since her next shift was scheduled to start in a few hours anyway, Lindsay decided to go to the hotel where she worked. As she walked toward the hotel, she heard someone "running" behind her but paid little attention, assuming it was an "early-morning jogger[]."

¶4        Lindsay then heard a "big footstep" behind her and was suddenly grabbed from behind. Feeling what she believed to be a knife against her neck, she was "terrified" that she was "going to die." Her assailant, whose face she could not see, threatened to kill her if she moved. He then pushed her onto the ground in nearby bushes and engaged in multiple acts of sexual contact with her.

¶5        After approximately ten minutes, the assailant pressed what felt like a gun to Lindsay's back, "told [her] to count to 50 before [she] got

---

[1] Pursuant to Rule 31.10(f) of the Arizona Rules of Criminal Procedure, we use a pseudonym to protect the victim's identity.

up," then ran away. Lindsay stood up and went into the hotel. She told a coworker she had been raped, and the coworker called 911.

**¶6**        Investigating officers found a condom wrapper at the scene. They also collected video security footage from the hotel as well as a nearby gas station and an apartment building.

**¶7**        Lindsay underwent a sexual assault examination during which swabs were taken from her vagina and anus and sent to the Arizona Department of Public Safety ("DPS") crime lab for DNA testing. Shortly after, Lindsay was forensically interviewed. She described the attack in considerable detail.

**¶8**        DPS crime lab personnel tested the swabs taken during Lindsay's examination and the condom wrapper found at the scene and compiled a DNA profile. Investigators ran the profile through the Combined DNA Index System ("CODIS") database, which generated a "hit" that, in turn, matched a "known sample" that had previously been obtained from Bell. The investigators determined Bell's current residence and placed him under surveillance.

**¶9**        Meanwhile, police examined the security footage obtained from the gas station and the apartment building. The gas station footage shows a man clad in black putting gas in a Jeep Wrangler while Lindsay walks past on the sidewalk. The man can then be seen getting into the Jeep Wrangler and driving away. Further investigation revealed that Bell had rented a Jeep Wrangler the night the assault occurred.

**¶10**        Police arrested Bell and executed a search warrant at his residence, finding black clothing that matched the clothing worn by the man in the gas station security video. Swabs taken from Bell upon his arrest contained DNA that matched the DNA on the swabs taken from Lindsay and the DNA found on the condom wrapper at the scene. Cell phone data obtained by warrant showed that Bell's cell phone was near the area of the assault at the time it occurred.

**¶11**        In November 2021, a grand jury indicted Bell on two counts of aggravated assault, a class 3 felony in violation of A.R.S. §§ 13-1203 and -1204; one count of kidnapping, a class 2 felony in violation of A.R.S. § 13-1304; two counts of sexual assault, a class 2 felony in violation of A.R.S. § 13-1406; and three counts of attempt to commit sexual assault, a class 3 felony in violation of A.R.S. §§ 13-1001 and -1406. Each of the sexual assault and

attempted sexual assault counts charged a separate act that was committed in the course of the attack on Lindsay.[2]

¶12      Bell, who chose to represent himself, filed a motion to dismiss the indictment on the grounds that it was impermissibly "multiplicative" because it "charged" a "single" sexual assault "in multiple counts." Finding that the indictment "properly alleged five separate counts" arising out of the assault, the court denied Bell's motion to dismiss.

¶13      At a settlement conference held several months before trial, the State extended a plea offer that would have required Bell to plead guilty to two counts of sexual assault, for which he would serve consecutive 10-year sentences, and two counts of attempted sexual assault, for which he would serve lifetime probation following his release from prison. Bell rejected the plea offer.

¶14      A week before trial, the State filed a motion to amend the indictment, seeking to amend Counts 5 through 7, which alleged attempt to commit sexual assault, to charge completed offenses instead. Bell filed a

---

[2] The relevant counts read as follows:

COUNT 3: [Bell] . . . intentionally or knowingly, did engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To wit[,] licks her genitals while she is lying down)[.]

COUNT 4: [Bell] . . . intentionally or knowingly, did engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To wit[,] sucks her clitoris while she is lying down)[.]

COUNT 5: [Bell] . . . intentionally or knowingly, did attempt to engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To wit[,] penetrate her labia with his penis)[.]

COUNT 6: [Bell] . . . intentionally or knowingly, did attempt to engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To wit[,] licks her genitals while she is on her knees)[.]

COUNT 7: Bell . . . intentionally or knowingly, did attempt to engage in sexual intercourse or oral sexual contact with Victim A, without the consent of Victim A, (To wit[,] penile/vaginal penetration while she is on her knees)[.]

4

written objection, arguing that the State's proposed amendment was impermissible under Arizona Rule of Criminal Procedure ("Rule") 13.5(b). "[T]he elements of the [proposed] amended charges differ from those of the original charges," Bell argued, and so the amendment would improperly "change the nature of the offense."

¶15 The court heard argument on the motion to amend on the first day of trial. After the State presented its argument in support of its proposed amendment, Bell replied, "Honestly, it doesn't matter. I got to fight the charges regardless, whether it's attempt or not." When the court indicated that it understood Bell's position to be that he was "not necessarily agreeing with" the motion to amend but was "not going to contest it," Bell replied, "I'm not doing either." Noting that Bell was "definitely not consenting to" the motion to amend, the court granted the motion after finding that the amendment would cause no "prejudice . . . to the defense."

¶16 At trial, Bell's defense was misidentification and insufficiency of the State's evidence. The State presented testimony from 18 witnesses, including Lindsay, the coworker to whom Lindsay first reported the assault, various law enforcement officers, and criminalists who analyzed the physical evidence. The State also presented portions of the recording of Lindsay's forensic interview. Bell presented no evidence. The jurors found Bell guilty on all of the kidnapping and sexual assault counts. They were unable to reach a verdict on the two aggravated assault counts or on the State's allegation, for sentencing enhancement purposes, that each offense was dangerous. *See* A.R.S. § 13-704. During the aggravation phase, the jury found that each offense of which Bell was convicted "caused physical, emotional or financial harm to the victim."

¶17 In May 2024, Bell was sentenced to consecutive eight-year prison terms for each of the five sexual assault counts and a concurrent five-year term for kidnapping, for a total of 40 years in prison.

¶18 Bell timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21, 13-4031, and 13-4033(A).

## DISCUSSION

¶19 Bell challenges his convictions for sexual assault, asserting that his convictions violated applicable court rules and constitutional guarantees. Bell does not challenge his conviction or sentence for kidnapping, which we therefore affirm. *See State v. Hardin*, No. 1 CA-CR 19-

0125, 2020 WL 628725 at *2-3, ¶¶ 7, 11 (Ariz. App. Feb. 11, 2020) (mem. decision) (affirming conviction and sentence that defendant "[did] not challenge" on appeal).

## I. Multiplicity

**¶20** Bell argues that the counts alleged in the indictment were impermissibly multiplicitous because they were based on acts committed "at virtually exactly the same time" against "the same victim." According to Bell, convicting him of "separate and discrete crimes" based on "one brief continuous course of conduct," and then imposing "consecutive sentences" for these crimes, violated his rights to due process and to be free from double jeopardy.

**¶21** The double jeopardy provisions of the United States and Arizona constitutions bars multiple punishments for a single offense. U.S. Const. amend. V; Ariz. Const. art. II, § 10. Multiplicity, which "occurs when an indictment charges a single offense in multiple counts," creates the "potential for multiple punishments" for one offense and thus "implicates double jeopardy." *State v. Powers*, 200 Ariz. 123, 125, ¶ 5 (App. 2001) (citations omitted). "Multiplicitous charges" do not violate the prohibition against double jeopardy, however, unless "multiple punishments are . . . imposed." *Merlina v. Jejna*, 208 Ariz. 1, 4, ¶ 14 (App. 2004); *see also State v. Kelly*, 257 Ariz. 128, 131-32, ¶ 6 (App. 2024) ("Multiplicitous charges are not unlawful in themselves, but only become so if a defendant receives multiple sentences for the same crime." (citation modified). "Whether charges are multiplicitous is an issue of statutory interpretation, which we review de novo." *State v. Brown*, 217 Ariz. 617, 620, ¶ 7 (App. 2008).

**¶22** Contrary to Bell's suggestion, the determination of whether counts are multiplicitous does not turn on the duration of the criminal conduct. Instead, a court addressing a multiplicity challenge looks to whether "each count" that is alleged to be multiplicitous "requires proof of a fact that the other counts do not." *State v. Barber*, 133 Ariz. 572, 576 (App. 1982), *approved* 133 Ariz. 549 (1982); *see also Merlina*, 208 Ariz. at 4, ¶ 12 ("Offenses are not the same, and therefore not multiplicitous, if each requires proof of a fact that the other does not."). A defendant who commits separate sexually assaultive acts during the course of a single attack, therefore, may properly be separately punished for each one. *See State v. Boldrey*, 176 Ariz. 378, 381 (App. 1993) ("Multiple sexual acts that occur during the same sexual attack may be treated as separate crimes."); *see also State v. Williams*, 182 Ariz. 548, 563-64 (App. 1995) ("[F]ellatio, cunnilingus, vaginal intercourse, digital intercourse and anal intercourse are different"

types of sexual assault "since each act is factually distinct from the other"), *superseded in part on other grounds by rule*, Ariz. R. Evid. 104.

¶23        Counts 5 through 7 are plainly based on distinct acts. Lindsay testified to three distinct acts that were charged in Counts 5 through 7. Although, as Bell observes, Counts 5 and 7 both allege penile penetration, they were clearly separated by an intervening event, *i.e.*, the oral sexual conduct alleged in Count 6. Each of these acts is distinct and so may be separately punished. *See Williams*, 182 Ariz. at 563-64 (holding that "three acts of anal intercourse" that were "interrupted . . . to change positions" constituted "separate crime[s]" that could "be punished consecutively").

¶24        Bell focuses his multiplicity argument on Counts 3 and 4, arguing that those two counts "in particular" are multiplicitous because they allege "simultaneous acts of oral sexual contact" that "cannot be unraveled into two separate acts."

¶25        Count 3 of the indictment alleges that Bell committed sexual assault, "to wit[,] lick[ing the victim's] genitals while she [was] lying down[.]" Count 4 alleges that Bell committed sexual assault, "to wit[,] suck[ing her] clitoris while she [was] lying down[.]" The State does not dispute that the "to wit" language of the two counts allege conduct that cannot be meaningfully distinguished. The State argues, however, that the two counts are not multiplicitous because, despite the reference in the "to wit" language of Count 3 to the victim's "genitals," Count 3 actually referred to Bell's conduct in licking her anus. Counts 3 and 4 are not multiplicitous, the State maintains, because they allege that "Bell assaulted two different body parts—Lindsay's anus (Count 3) and Lindsay's genitals (Count 4)."

¶26        During a portion of her forensic interview that was played at trial, Lindsay stated that "he started licking in between my butt" and then "started sucking on the . . . clitoris[.]" At trial, Lindsay similarly testified that after she was pushed to the ground and her pants were pulled down, she "felt somebody lick me on my behind," later clarifying that she was referring to her "rectum." In closing argument, the prosecutor argued that Lindsay's testimony about oral/anal contact, along with evidence that Bell's "DNA was found" on her "anus," established Bell's guilt of Count 3, while Lindsay's statements about oral/vaginal contact established Bell's guilt of Count 4. The prosecutor's closing argument thus made clear to the jurors that the two counts referred to oral contact with different body parts. *See State v. Corbitt*, No. 1 CA–CR 17-0120, 2018 WL 1391324 at *2, ¶ 6 (Ariz. App. Mar. 20, 2018) (mem. decision) (rejecting argument that two offenses

were multiplicitous in part because "the State properly explained to the jurors" the "separate acts" that "had to be found to convict on" each count). Together, the evidence and the State's closing argument established that the two counts referred to distinct acts, which may be separately punished. *See State v. Griffin*, 148 Ariz. 82, 86 (1986) (affirming consecutive sentences imposed for multiple convictions arising out of separate acts of forced oral, vaginal, and anal sexual contact during a single attack, and holding that "[e]ach felonious act . . . was performed in an entirely different manner and each was accompanied by the use of force and a lack of consent").

¶27 Admittedly, the "to wit" language of Count 3 makes no reference to the victim's anus. The fact that the evidence establishing Bell's contact with her anus did not match the "to wit" language of Count 3 entitles Bell to no relief, however, because the "[m]ere mention in the indictment of facts that the State intends to elicit in proving the crime does not transform those facts into elements of the offense." *State v. Marshall*, 197 Ariz. 496, 506, ¶ 39 (App. 2000). Because the evidence established that Bell engaged in distinct acts of oral sexual contact with two different body parts, his convictions on Counts 3 and 4 are not multiplicitous. *See Williams*, 182 Ariz. at 563-64 ("[When] multiple assaults of the same type occur[] in very rapid succession during a single episode . . . each act constitute[s] a separate crime[.]").

¶28 In support of his position, Bell cites *State v. Moninger*, 258 Ariz. 18 (2024), for the proposition that the State cannot properly punish multiple acts that constitute a single "unit-of-prosecution." In *Moninger*, the defendant was charged with three counts of luring a minor for sexual exploitation after exchanging explicit text messages over a three-day period with a police officer impersonating a minor. 258 Ariz. at 20-21, ¶¶ 3-6. After being convicted and sentenced to consecutive prison terms, the defendant challenged his convictions as multiplicitous. The Arizona Supreme Court agreed, holding that the three counts were "based on one continuous course of conduct." *Id.* at 25, ¶¶ 34-35.

¶29 *Moninger* is irrelevant, however, because that case addresses an issue not presented in this case, *i.e.*, whether "a course of conduct," as opposed to multiple discrete acts, may properly lead to multiple punishments. *Id.* at 20, ¶ 1. Here, each count of the indictment was based on a separate, distinct act. Nothing in *Moninger* prohibits multiple sentences for multiple acts; on the contrary, the *Moninger* court expressly acknowledged that "a series of distinct acts can beget several offenses — and several punishments." *Id.* We therefore reject Bell's challenge to his

convictions and sentences on the grounds that the counts in the indictment were multiplicitous.

## II.    Amendment to the indictment under Rule 13.5(b)

**¶30**        Bell argues that the superior court erred in granting the State's motion to amend the indictment, asserting that amending Counts 5 through 7 to charge completed offenses rather than attempts amounted to "an impermissible substantive amendment" that violated Rule 13.5.

**¶31**        Absent the defendant's consent, Rule 13.5(b) permits a charge to be amended "only to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). We review amendments to an indictment under Rule 13.5(b) for an abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247, ¶ 4 (App. 2000).

**¶32**        The State concedes that the superior court "likely violated Rule 13.5(b)" by amending the indictment "to allege completed rather than attempted offenses in Counts 5-7." The State nonetheless contends that Bell is entitled to no relief because he "has failed to show how the amendment prejudiced him." Asserting that "it is unclear whether Bell truly objected to the amendment[,]" the State urges us to review for fundamental error. Fundamental error review places the burden on the defendant to "establish both that fundamental error occurred and that it caused him prejudice." *State v. Strong*, 258 Ariz. 184, 200, ¶ 45 (2024) (citation omitted).

**¶33**        Before trial, Bell objected in writing to the State's motion to amend. His written objection alone was enough to preserve for appeal his objection to the amendment. *See State v. Burton*, 144 Ariz. 248, 250 (1985) ("[W]here a motion in limine is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial."). Moreover, although Bell did not unambiguously reiterate his objection to the State's motion when it was argued on the first day of trial, the court found that Bell "definitely" did "not consent[]" to the amendment. The State does not dispute the court's factual finding on that point. Because Bell objected to the proposed amendment in writing and never consented to it afterwards, he preserved his objection to it, and so we review for harmless error. The harmless error standard "places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Strong*, 258 Ariz. at 200, ¶ 45 (quoting *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005)).

**¶34**        Rule 13.5(b) permits the amendment of a charge without the defendant's consent only if the amendment "does not operate to change the

nature of the offense charged or to prejudice the defendant in any way." *State v. Freeney*, 223 Ariz. 110, 112, ¶ 11 (2009) (citation omitted). The rule does not, in other words, authorize amendments that "alter[] the elements of the charged offense." *Id.* at 113, ¶ 17.

**¶35**　　　　Here, the amendment changed the offenses charged in Counts 5 through 7 from attempted sexual assault to sexual assault. The two are distinct offenses. A person commits sexual assault by (1) "intentionally or knowingly" (2) "engaging in sexual intercourse or oral sexual contact with any person" (3) "without consent of such person." A.R.S. § 13-1406(A). By contrast, a person commits attempt to commit sexual assault only (as relevant here) by "[i]ntentionally" doing "anything which, under the circumstances as [the person] believes them to be," constitutes a "step in a course of conduct planned to culminate in commission of an offense[.]" A.R.S. § 13-1001(A)(2). A conviction for a completed sexual assault thus requires proof of more than is required to prove an attempt. *State v. Ottar*, 232 Ariz. 97, 101, ¶ 15 (2013) ("An attempt is substantively different from a completed crime and requires only that the defendant intend to engage in illegal conduct and that he take a step to further that conduct." (citation modified)). Because the amendment to Counts 5 through 7 added elements to the crime being charged, the amendment violated Rule 13.5(b). *See Freeney*, 223 Ariz. at 111, 113, ¶¶ 4, 9, 20 (holding that amendment to aggravated assault charge that changed the theory of the underlying assault from "intentionally plac[ing the victim] in reasonable apprehension of imminent physical injury" in violation of A.R.S. § 13-1203(A)(2) to "intentionally, knowingly or recklessly causing any physical injury" in violation of A.R.S. § 13-1203(A)(1) "change[d] the nature of the offense," and so "was not authorized under Rule 13.5(b).").

**¶36**　　　　The State maintains that the error in amending Counts 5 through 7 did not prejudice Bell because he purportedly "had notice" that the evidence was sufficient to establish not merely attempts, but completed offenses. "[T]he evidence presented to the grand jury," the State argues, "detailed completed sexual assaults," and Bell never "argue[d] that the State's evidence" at trial "varied" from "the evidence presented to the grand jury."[3] Moreover, the State contends, the amendment had no effect

---

[3] In its briefing the State appears to contend that both parties were under the impression all along that Counts 5 through 7 alleged "completed offenses" rather than "attempted offenses," and that it was not until shortly before trial that the State "noticed" the "error." The record does not support this assertion. At the final trial management conference, and before the State

on "how Bell defended the charges against him" because his defenses of misidentification and insufficiency of the evidence "would have been the same regardless of whether he was charged with attempted sexual assault or completed sexual assault."

¶37        The State's argument overlooks the fact that error is not harmless unless the State "prove[s] beyond a reasonable doubt" that it "did not contribute to or affect the verdict *or sentence*." *Strong*, 258 Ariz. at 200, ¶ 45 (emphasis added) (citation omitted). Here, the erroneous amendment had significant sentencing consequences. As Bell correctly argues, the amendment increased the offenses charged in Counts 5 through 7 from class 3 to class 2 felonies. Such an amendment is substantive, and not the kind of "formal or technical" amendment contemplated by Rule 13.5(b). *See State v. Mikels*, 119 Ariz. 561, 562-63 (App. 1978) (holding that court erred in permitting prosecutor to amend indictment to charge an offense different from "the crime for which [the defendant] was indicted"); *see also State v. Dorn*, 182 A.3d 938, 947-48 (N.J. 2018) (holding that amendment that changed charged crime "from a third-degree to a second-degree offense," which had "the potential to significantly alter a defendant's penal exposure," was "substantive"). Moreover, not only does a conviction for a completed sexual assault expose a defendant to a longer potential term of incarceration than a conviction for an attempt,[4] but multiple sentences for the former, unlike the latter, must be consecutive to each other. *See* A.R.S. § 13-1406(C) (mandating consecutive sentences for sexual assault convictions).

¶38        To meet its burden of showing harmless error, the State must establish beyond a reasonable doubt that the erroneous amendment to three of the counts had no impact on Bell's sentence. *Strong*, 258 Ariz. at 200, ¶ 45. The State must establish, in other words, that Bell's prison sentence would have been the same even without the amendment. The State makes no effort

---

filed its motion to amend, the court noted that the indictment charged both completed offenses and attempts, and asked whether "sentences for the attempt" are "the same" as for completed offenses. The prosecutor responded that "the attempts are a Class 3, so they have a lower sentencing range than the completed offenses." This exchange refutes the State's suggestion that the parties mistakenly believed from the outset that the indictment charged only completed offenses.

[4] Sexual assault is a class 2 felony with a presumptive sentence of 7 years and a sentencing range of 5.25 to 14 years. A.R.S. § 13-1406(B). Attempted sexual assault is a class 3 felony with a presumptive sentence of 3.5 years and a range of 2 years to 8.75 years. A.R.S. §§ 13-702(D), -1001(C).

to make such a showing and so has conceded the issue. *See Castillo v. Lazo*, 241 Ariz. 295, 298, ¶ 9 (App. 2016) (failure to "meaningfully respond[] to [an] argument . . . could [be] considered a concession of the issue"). In any event, the erroneous amendment to Counts 5 through 7 on the eve of trial, which exposed Bell to a significantly longer period of incarceration, clearly prejudiced him, particularly since the amendment was not made until after he rejected a plea offer that would have required him to serve a sentence half as long as the one to which he was ultimately sentenced. *See State v. Donald*, 198 Ariz. 406, 413, ¶ 14 (App. 2000) (holding that if "the State engages in plea bargaining, the defendant has a Sixth Amendment right to be adequately informed of the consequences before deciding whether to accept or reject the offer."). We therefore hold that the State has failed to meet its burden to show that the error in amending the indictment in violation of Rule 13.5(b) was harmless.

**¶39**        Bell also argues that the amendment of Counts 5 through 7 violated various constitutional provisions, including the provision of the Arizona Constitution prohibiting the State from charging a felony offense except by information or indictment. *See* Ariz. Const., art. II, § 30. Because we hold that the amendment violated Rule 13.5(b), we do not address Bell's constitutional challenge to the amendment. *See State v. Nunn*, 250 Ariz. 366, 368, ¶ 6 n. 1 (App. 2020) ("[W]e do not determine constitutional issues unless a decision is necessary to determine the merits of the action." (citation modified)).

**¶40**        We requested, and received, supplemental briefing from the parties addressing the proper remedy for the error in amending Counts 5 through 7 from attempts to completed offenses. Bell contends that his convictions on these counts must be vacated and remanded for a new trial. But Bell has not argued, on appeal or below, that the improper amendment of Counts 5 through 7 affected his trial strategy. He has not suggested, in other words, that the defenses he asserted at trial — misidentification and insufficiency of the evidence — would have been different had Counts 5 through 7 not been amended from attempts to completed offenses.

**¶41**        The State argues that Bell's convictions on Counts 5 through 7 should be treated as convictions for the offenses as originally charged. Noting that an attempt is a lesser-included offense of the completed crime, *see State v. McCurdy*, 15 Ariz. App. 227, 228 (1971), the State argues that the jurors' decision to convict Bell of three counts of sexual assault necessarily reflects their determination of his guilt of the lesser included offense of attempted sexual assault on each count. Accordingly, the State contends,

Bell's convictions on Counts 5 through 7 should be modified to the offenses originally charged, and he should be resentenced on those counts.

¶42　　　　Because the original charges are lesser included offenses of the counts of which Bell was convicted, adopting the State's proposed remedy would in no way infringe on Bell's due process rights. *See State v. Larson*, 222 Ariz. 341, 343, ¶ 6 (App. 2009) (noting that constitutional provisions entitling an accused to notice of the crime with which he is charged permit "an accused [to] be convicted of an offense different from that with which he was charged only if it is included in the offense charged." (citation modified)). Further, the State's proposed remedy is consistent with A.R.S. § 13-110, which provides that a defendant may be convicted of an attempted offense even if the evidence establishes that the offense was completed.

¶43　　　　The State's proposed remedy is also consistent with that adopted by this Court in *State v. DiGiulio*, 172 Ariz. 156 (App. 1992). The defendant in that case appealed his conviction for trafficking in stolen property in the first degree, asserting that the jury instructions erroneously omitted the element that distinguished that offense from trafficking in stolen property in the second degree, *i.e.*, that the defendant participate in the underlying theft as well as the post-theft trafficking. *See* A.R.S. § 13-2307(A), (B). This Court agreed but held that a retrial was not necessary because the instructions "adequately informed the jury of the elements of trafficking in the second degree, a lesser-included offense." *DiGiulio*, 172 Ariz. at 161. Because the jury convicted the defendant after being properly instructed on the lesser-included offense, the *DiGiulio* court modified the judgment to reflect the defendant's conviction for the lesser-included offense and remanded the matter for resentencing. Such a result, the *DiGiulio* court held, "work[ed] no injustice on the defendant," and instead spared him the risk of "conviction of first degree trafficking" if "retrial were ordered." *Id.* at 161-62.

¶44　　　　*DiGiulio* is in accord with the holding of courts from other jurisdictions that have considered challenges to convictions on improperly-amended charges. *Dorn*, 182 A.3d at 948 (holding that trial court erred in amending charge from third-degree drug offense to more serious second-degree offense, and remanding for resentencing on count as originally charged); *see also Jamison v. State*, 73 So.3d 567, 572, ¶ 18 (Miss. App. 2011) (vacating sentence and remanding for resentencing under lesser penalties when improper amendment to indictment increased severity of charge); *People v. Patterson*, 642 N.E.2d 866, 870 (Ill. App. 1994) (same). Pursuant to *DiGiulio*, we agree with the State that the appropriate remedy for the

improper amendment of the three attempt charges is to amend the resulting convictions to the offenses originally charged and then remand for resentencing on those counts.

¶45	The State asks that Bell be resentenced on all counts, not merely Counts 5 through 7. Resentencing on all counts is warranted, the State argues, because the trial judge "may determine" that modifying three counts from class 2 to class 3 felonies "justifies longer prison sentences for the remaining counts."

¶46	The improper amendment to Counts 5 through 7 does not affect the validity of Bell's convictions or sentences for the remaining counts. We therefore reject the State's assertion that his sentences on the remaining counts should be set aside to afford the trial judge the opportunity to impose longer prison sentences on those counts.

¶47	We modify Bell's convictions on Counts 5 through 7 as amended to convictions for the offenses as originally charged, *i.e.*, attempt to commit sexual assault, class 3 felonies in violation of A.R.S. § 13-1001 and -1406. We vacate the sentences imposed on those counts and remand for resentencing on those counts. We affirm Bell's convictions and sentences on the remaining counts.

## CONCLUSION

¶48	We modify Bell's convictions on Counts 5, 6, and 7 as set forth above, vacate the resulting sentences, and remand for resentencing on those counts. We otherwise affirm in all respects.

